WALTER REEHLE V. STATE OF NEBRASKA.
285 N. W. 108

FILED APRIL 7, 1939.   No. 30567.

*Lloyd E. Peterson,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Clarence S. Beck, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, MESSMORE and JOHNSEN, JJ.

SIMMONS, C. J.

The defendant was charged with the crime of burglary, tried and convicted, and, after a motion for a new trial

was made and overruled, was sentenced to prison for three years. He appeals to this court, alleging errors of the trial court.

A general merchandise store at Palmyra, in Otoe county, Nebraska, was broken into on the night of February 12-13, 1938. Mr. Haley, the proprietor, testified that the following articles were missing from his store after the burglary: Two one hundred-pound sacks of sugar, four or five forty-eight-pound sacks of flour, some coffee, four cases of eggs of thirty dozen to a case, pipes, cigars, cigarettes, several kinds of chewing and smoking tobacco, pop corn, walnuts, canned goods, overalls, shirts, etc.

The evidence against the defendant was entirely circumstantial. We mention only the evidence that applies to the admission in evidence of certain exhibits.

On the second day following the burglary, officers visited a home in the city of Lincoln, occupied by two sisters, a child, and the defendant, and were permitted to search defendant's room and other parts of the house. Defendant occupied a room on the second floor. Living quarters were on the first floor.

The articles, hereinafter referred to, as found in the house, were in that part occupied by the landlady and her sister, as well as the defendant, for living quarters.

Mr. Haley testified that on the night before the robbery he had in the store one box of Sun Tan cigars, one-half or two-fifths full; that, after the robbery, only one or two were left in the box. In a coat belonging to the defendant, the officers found four Sun Tan cigars. Mr. Haley testified that some pop corn was missing. The officers testified that they found three kernels of pop corn on the back floor of the defendant's car. Mr. Haley testified that he missed Prince Albert tobacco of the size cans that "come in fifteen cent cans and retail at fifteen cents two for a quarter." Two small cans of Prince Albert tobacco were found in the defendant's car. An opened Velvet humidor tobacco can was found in the residence. It is much larger than the Prince Albert cans. Its contents were partly gone, and it

contained cigarette papers. Mr. Haley testified that he missed horseshoe tobacco. Two small plugs of horseshoe tobacco were found in the defendant's car. Mr. Haley testified that he lost Bliss coffee. An unopened can of Bliss coffee was found in the residence. Without further identification, other than testimony of the officers that they found the articles, as above set out, and over proper objections of the defendant, the specific articles above referred to were admitted in evidence. Defendant alleges that the admission of these exhibits was prejudicial error.

With the exception of the pop corn, the only possible connection shown between the exhibits found and the burglary was the testimony that articles of the same trade-name were missing from the store after the burglary. The danger of accepting evidence based solely upon the similarity of a trade-name is well shown by the acceptance of the Velvet humidor can in evidence. Mr. Haley testified that he did not think that there were any other size cans missing of any other kind of tobacco. The Velvet humidor can was not of the size stolen, and, hence, could not have been a part of the stolen property.

The complaining witness testified that he had missed pop corn. Three kernels of *yellow* pop corn, so described, were admitted in evidence.

The articles found and received in evidence were all articles of general commerce. They are such as would ordinarily be found in the possession and in the home of any one who used smoking and chewing tobacco. There is nothing unusual about the possession of such articles. The number of articles found of this class of merchandise is insignificant in comparison with the large amount and the greater variety stolen.

Identification of visual evidence as the stolen property is one of the elements that must be shown in proving a foundation for the admission of exhibits of property found in the possession of the accused following a robbery. Underhill, Criminal Evidence (4th ed.) p. 148; 36 C. J. 897; 9 C. J. 1070, 1081. Also, see *Wright v. State,* 21 Neb. 496,

32 N. W. 576; *Harding v. State*, 122 Neb. 766, 241 N. W. 526.

"The foundation on which rests the necessity of authentication is not any general principle of evidence, but an inherent logical necessity. * * * When a claim or offer involves impliedly or expressly any element *of personal connection with a corporal* object, that connection must be made to appear, like the other elements, else the whole fails in effect." 3 Wigmore, Evidence, p. 2889. (Italics ours.)

The admission of the exhibits in evidence was error.

"There is a general mental tendency, when a corporal object is produced as proving something, to assume, on sight of the object, all else that is asserted about it. The sight of it seems to prove all the rest. * * * This tendency, illogical though it be, is deeply rooted among all persons, even the most intelligent and reflective." 3 Wigmore, Evidence, p. 2890.

The introduction of these exhibits apparently caused the defendant to attempt to establish the ownership of the articles and the sources of possession of those articles claimed by him. Questions of fact were thereby put in issue and a burden placed upon the defendant as a result of the improper admission of the exhibits. This affected the substantial rights of the defendant and was prejudicial.

The motion for a new trial should have been granted.

It is not necessary that we consider the further assignments of error. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.